UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**KENNETH GRAY (#114113)**  CIVIL ACTION

**VERSUS**

**N. BURL CAIN, ET AL.**  NO. 15-0103-SDD-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 4, 2016.

*Erin Wilder-Doomes*
**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**KENNETH GRAY (#114113)**                                              **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, ET AL.**                                                **NO. 15-0103-SDD-EWD**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the parties cross-motions for summary judgment (R. Docs. 15 and 41).

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against former Warden Burl Cain, Ass't Warden Stephanie Lamartiniere and Legal Programs Director Trish Foster, alleging that his constitutional rights have been violated through deliberate indifference to his serious medical needs and through the defendants' alleged failure to respond to his written correspondence and to properly address his administrative grievance.

The plaintiff moves for summary judgment, relying upon the pleadings, copies of excerpts from his medical records, a copy of correspondence dated January 23, 2015, addressed to defendant Lamartiniere, a copy of a response memorandum dated March 18, 2015, from defendant Lamartiniere to the plaintiff, copies of excerpts from the plaintiff's administrative remedy proceedings, a copy of the written rules applicable to the prison administrative remedy procedure, a copy of correspondence dated February 25, 2015, addressed to the plaintiff from his relatives, a copy of correspondence dated April 16, 2015, addressed to the plaintiff from a representative of the American Civil Liberties Union of Louisiana, copies of two photographs taken of a lesion on the plaintiff's nose, and two sworn declarations provided

1

under penalty of perjury, one by the plaintiff and one by a co-inmate, Alan Michel.

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's pertinent administrative remedy proceedings, and the affidavit of Rhonda Z. Weldon. The defendants contend that dismissal is appropriate in the first instance based upon the procedural argument that the plaintiff has failed to exhaust administrative remedies as mandated by 42 U.S.C. § 1997e.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is

so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, as amended, the plaintiff alleges that between May and June 2014, he developed a sore on the right side of his nose. He asserts that he took measures to heal the sore himself, but it persisted and grew larger and, by October 2014, was bleeding periodically and causing him pain, and people began recommending that he seek medical attention because it might be cancerous. Accordingly, on November 4 and December 15, 2014, respectively, the plaintiff allegedly submitted sick call requests to prison officials, seeking medical attention for the sore on his nose. Although the plaintiff was admittedly seen by medical technicians on both of those dates, he complains that no treatment was provided and that he was not scheduled for an appointment with a physician at the LSP treatment center. As a result, on January 23, 2015, approximately three months after his initial request for treatment, the plaintiff addressed correspondence to defendant Stephanie Lamartiniere, the LSP "assistant warden over treatment," complaining about the delay in treatment. According to the plaintiff, when defendant Lamartiniere failed to respond promptly to that letter, the plaintiff submitted an administrative grievance to prison officials a week later, on February 1, 2015, "asking for nothing more than treatment for [his] nose." *See* R. Doc. 23 at p. 5. The plaintiff complains that the grievance was improperly rejected on February 11, 2015, without substantive review, assertedly because it was untimely, having been submitted more than 90 days after the incident complained of in violation of prison rules. Upon receipt of the referenced rejection, the plaintiff commenced this lawsuit by submitting a Complaint to prison officials

for transmission to the Court.

In addition to the foregoing, the plaintiff alleges that he was finally seen at the LSP infirmary on February 25, 2015, shortly after the filing of his Complaint. He asserts that this medical attention was precipitated by one or more members of his family making telephone calls to the prison on that date. According to the plaintiff, he was seen in the LSP emergency room on that date, was given an appointment to see a physician in the LSP infirmary a week later and, finally, was given a referral to see a dermatologist. The plaintiff alleges that the physician in the LSP infirmary informed him that the sore on his nose was "facial cancer," *see id*. at p. 6, but this is not reflected in the plaintiff's medical records.

Based on the foregoing, the plaintiff asserts that the defendants are liable to him in damages for failing to attend to his serious medical needs. With regard to defendant Lamartiniere, the plaintiff asserts that this defendant was notified of the plaintiff's need for medical attention as a result of his correspondence of January 23, 2015, but failed to respond thereto and is therefore responsible for the worsening of his condition. With regard to defendant Trish Foster, the plaintiff complains that this defendant, as director of the Legal Programs Department at LSP, improperly rejected his administrative grievance as untimely when the grievance was in fact timely submitted to prison officials within 90 days of his first sick call request of November 4, 2014. Finally, the plaintiff asserts that defendant Cain has exhibited deliberate indifference by telling physicians at LSP for years, "not to do much" for inmates confined at the prison.

In response to the plaintiff's allegations, the defendants first contend that the plaintiff's claims are subject to dismissal for failure to exhaust administrative remedies. In this regard, pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available at the prison prior to

4

commencing a civil action in this Court with respect to prison conditions.[1] This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Specifically, not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *Johnson v. Johnson, supra*, 385 F.3d at 516, *quoting Porter v. Nussle, supra*, 534 U.S. at 525. Thus, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose. *Id.*

Upon a review of the plaintiff's pertinent administrative remedy proceedings, the Court finds that the defendants' motion is well-taken and should be granted. Specifically, the Court finds that the plaintiff's grievance is deficient because it fails to sufficiently assert the claims that are now presented before this Court.[2] In this regard, a review of the record reflects that the plaintiff submitted his administrative grievance to prison officials on or about February 1, 2015, and he complained therein only about a delay in treatment resulting from the alleged failure of unidentified prison officials to promptly provide him with a doctor's visit after his sick call requests of November 4 and December 15, 2014. *See*

---

1. 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

2. In reaching this conclusion, the Court need not address the defendants' alternative argument that the plaintiff's grievance was in fact properly rejected as untimely.

R. Doc. 41-3 at p. 5. The sole claim presented in the referenced grievance, therefore, is one of dissatisfaction with medical care that was provided to him between November 2014 and the date of the grievance, February 1, 2015, either on the part of the medical technicians who failed to determine the seriousness of his condition and to schedule an appointment for him at the infirmary or the failure of nurses or physicians at the infirmary to review the technician's notes and to themselves schedule such an appointment.[3] The plaintiff's grievance makes no mention whatever of defendants Lamartiniere, Foster or Cain, and further makes no factual assertion (1) that defendant Lamartiniere failed to timely respond to the plaintiff's correspondence sent a week previously on January 23, 2015, (2) that defendant Foster later improperly rejected the plaintiff's administrative grievance as untimely, or (3) that defendant Cain has for years encouraged physicians to provide inadequate medical care to inmates. Accordingly, there is nothing in the plaintiff's grievance that would have placed prison officials on notice that the plaintiff was attempting to assert the specific claims that are now brought against the defendants named in this lawsuit, so as to "provide administrators with a fair opportunity under the circumstances to address the problem" now presented herein. *See Johnson v. Johnson, supra*, 385 F.3d at 517. Thus, even had prison officials accepted and addressed the plaintiff's grievance – instead of rejecting it as untimely – the grievance would

---

3. The pertinent substance of the plaintiff's administrative grievance, *see* R. Doc. 41-3 at p. 5, is as follows:

   I saw sickcall on Nov. 4, 2014 for a sore on my nose that had not healed in seven months. I was told if it didn't turn black, don't worry about it.... I saw another E.N.T. on Dec. 15, 2014.... I was told nothing, I have not been called to the treatment center for this problem.

   Several months to be called to the treatment center[,] which in many cases require being referred to a specialist[,] which may take several more months[,] is deliberate indifference also.

   \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

   Relief [Requested]:

   That I be called to the treatment center for my nose as was twice requested. Nothing further.

6

only have effectively asserted a claim against unidentified health care providers who failed to attend to his medical complaints between November and February, not the claims now asserted against the defendants before the Court. Accordingly, the Court finds that the plaintiff has failed to properly exhaust his administrative remedies regarding these claims as mandated by 42 U.S.C. § 1997e.[4] In the absence of adequate notice provided to prison officials that the plaintiff intended to assert specific substantive claims of alleged wrongdoing by these defendants, the Court finds that the plaintiff has failed to exhaust administrative remedies as to them and that they are entitled to summary judgment as a matter of law.

In addition to the foregoing, and in the alternative, the Court finds that summary judgment is appropriately granted in favor of the defendants and against the plaintiff in any event. As discussed hereafter, the Court finds, *sua sponte*, that the plaintiff has failed to present facts or evidence sufficient to support a viable constitutional claim of deliberate medical indifference by the defendants in this case.[5]

In order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must be able to show that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106

---

4. It appears from the record that after the filing of his Complaint in this case, the plaintiff submitted a second administrative grievance to prison officials on or about March 17, 2015. *See* R. Doc. 26-2 at p. 3. Not only is that grievance not properly before the Court – because it was submitted after the filing of the Complaint – but a review of that second grievance reflects, in any event, that it similarly does not sufficiently assert the claims presented herein. Specifically, although that grievance makes reference to the plaintiff having attempted to obtain medical attention for his nose between November 2014 and February 2015, the grievance is principally addresses the plaintiff's wish to refuse to participate in a scheduled annual physical examination. In this regard, the sole relief requested in the referenced grievance is for prison officials to "stop harassing me about a physical," "stop trying to force me to take a physical," and "stop calling one [sic] more than once a year for a physical."

5. When the plaintiff has moved for summary judgment and the record developed on the plaintiff's motion reveals that the defendants are entitled to summary judgment, the Court has discretion to grant summary judgment to the defendants even though no formal motion has been filed, provided that adequate notice and an opportunity to respond is provided. *See NL Industries v. GHR Energy Corp.*, 940 F.2d 957 (5th Cir. 1991); *Arkwright Boston Mfgs. Mutual Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442 95th Cir. 1991); *Marriott Brothers v. Gage*, 911 F.2d 1105 (5th Cir. 1990). The plaintiff is hereby given such notice, through the issuance of this Report and Recommendation and through the 14-day period allowed to the plaintiff to respond thereto under 28 U.S.C. § 636(b)(1).

(1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble, supra.* Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

In addition to the foregoing, in order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal, supra*, 556 U.S. at 676 (2009),

*citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

Applying the foregoing principles, it is clear that the plaintiff has failed to allege facts or present evidence sufficient to support a claim of deliberate medical indifference on the part of the defendants named in this case. Specifically, the plaintiff's Complaint relates essentially to only a 3½-month period between when he first requested medical attention for his nose on November 4, 2014, and when he was admittedly escorted to the prison infirmary for an evaluation of his complaints on February 25, 2015.[6] Further, as to this 3½-month period, the plaintiff concedes that he was seen at the beginning thereof by a medical technician when he first submitted a sickcall request on November 4, 2014, and also when he submitted a second request on December 15, 2014. Although the plaintiff complains that the unidentified medical technicians who evaluated him on those dates failed to properly treat his condition, failed to properly determine the severity thereof, and/or failed to schedule him promptly for an appointment at the infirmary, there is no suggestion that such failure was the result of a callous disregard on the part of the

---

6. In subsequent pleadings, the plaintiff has complained generally about the quality of the care that has been provided to him by LSP physicians and by LSU dermatology residents since he was first escorted to the prison infirmary on February 25, 2015. These complaints, however, are not addressed in this proceeding because the plaintiff has not sought leave to amend his Complaint to assert these claims or to add the referenced health care providers, and these claims relate to events occurring after the filing of the original Complaint that have not been exhausted through the mandatory prison administrative process.

9

two providers or a wish to deny the plaintiff medical attention or cause him harm. To the contrary, the plaintiff's allegations sound more in the nature of a claim of negligence or misdiagnosis or a claim of mere disagreement with the care provided, and such a claim, as noted above, is not cognizable under § 1983. Thus, the plaintiff's two interactions with unidentified medical technicians in November and December, 2014, are not indicative of any deliberate medical indifference on the part of prison personnel, much less on the part of the defendants named herein who did not attend the plaintiff or otherwise have notice of his complaints.

In addition, pursuant to the plaintiff's own admission, the earliest that any of the named defendants could have personally learned of the plaintiff's specific complaints regarding his medical care was, for defendant Lamartiniere, no earlier than the plaintiff's letter addressed to this defendant dated January 23, 2015, and for defendants Foster and Cain, no earlier than the receipt by prison personnel of the plaintiff administrative grievance on or about February 3, 2015. Inasmuch as the plaintiff was admittedly provided with the relief that he requested -- an appointment for medical attention at the prison infirmary -- within approximately a month thereafter on February 25, 2015, and inasmuch as he has since been evaluated by physicians at LSP and been referred for consultation and treatment with dermatological specialists, it appears that the plaintiff's claim may be characterized as principally one of only a relatively brief period of delay in the provision of medical care. Further, there is no suggestion in the record that this period of delay resulted in any worsening or aggravation of the plaintiff's condition. *See Mendoza v. Lynaugh, supra*, 989 F.2d at 195. Thus, there is no evidence in the record that supports the imposition of liability against the named defendants.

Finally, the Court finds it significant, in addition to the foregoing, that the evidence in the record reflects that during the pertinent time period, *i.e.,* in late 2014 and early 2015, the plaintiff repeatedly

refused medical care offered to him at LSP in the form of a scheduled annual physical examination. *See* R. Doc. 41-3 at p. 5. Specifically, the evidence reflects that both before and after his initial sick call request of November 4, 2014, the plaintiff refused, on a *monthly* basis, to attend and participate in such an examination. His position in doing so was that such examinations were "low level medical procedures" that he did not wish to participate in. *See id.* *See also* R. Doc. 26-2 at p. 3, wherein the plaintiff stated, in an administrative grievance dated March 17, 2015, that he had refused, *every month for four months*, to participate in a scheduled physical examination and that he wanted prison officials to "stop harassing me about a physical," to "stop trying to force me to take a physical," and to "stop calling me more than once a year for a physical." In the Court's view, it was not reasonable for the plaintiff to refuse, during the 3½-month period that he complains of in this case, to attend medical appointments that were scheduled for him and at which he could have attempted to voice his complaints regarding the lesion on his nose. Although he asserts that the scheduled physical examination was a "meaningless pretense at health care" and that inmates "can not even tell the doctor about anything that is wrong with [them] during a physical," this is a conclusory assertion in which the Court places limited credence. It is more likely that had the plaintiff presented at the scheduled physical examination with an obvious condition that objectively required medical care, he would have been scheduled for such care in due course. The plaintiff apparently believes that he is more able than are the physicians employed at LSP to determine when and for what conditions he requires medical attention. *See* R. Doc. 41-3 at p. 5 ("I am aware as to when I should seek medical advise [sic], and do so only at such time"). This, however, is an unreasonable position to take, particularly when he wishes to impose liability upon prison officials for failing to attend to his medical needs.

Based on the foregoing, the Court concludes that the evidence in this case fails to support a finding

11

of deliberate medical indifference on the part of the defendants in this case. Instead, the most that can be gleaned from the evidence in the record is that the plaintiff requested medical attention on November 4 and December 15, 2014, and was seen and evaluated on both dates by medical providers, neither of whom have been named as defendants. Believing that he should have been scheduled for an appointment in the LSP infirmary, the plaintiff forwarded correspondence to defendant Lamartiniere on January 23, 2015, and submitted an administrative grievance to prison officials a week later on February 1, 2015. The plaintiff was thereafter provided with an evaluation in the infirmary on February 25, 2015, and he has since been provided with treatment by both LSP physicians and outside specialists. Thus, this case essentially involves only a relatively brief period of time between when the plaintiff initially sought medical attention and when he was evaluated by a physician, and this period was not directly attributable to any of the defendants. At most, this period of delay resulted from the alleged failure of medical technicians on November 4 and December 15, 2014, to determine the seriousness of the plaintiff's complaint and to schedule an appointment in the infirmary. Such misdiagnosis or negligence or mere disagreement regarding appropriate care is not actionable under section 1983. Although the plaintiff was apparently dissatisfied with the medical care that was provided to him at LSP, such dissatisfaction does not support a claim of deliberate medical indifference. Accordingly, the Court finds that the plaintiff has failed to adequately support his claim asserted against the defendants herein and that the defendants are therefore entitled to summary judgment as a matter of law.

## RECOMMENDATION

It is recommended that the plaintiff's Motion for Summary Judgment (R. Doc. 15) be denied and that the defendants' Motion for Summary Judgment (R. Doc. 41) be granted, dismissing the plaintiff's claims asserted against the defendants, without prejudice, for failure to exhaust administrative remedies

pursuant to 42 U.S.C. § 1997(e). It is further recommended, in the alternative, that summary judgment be granted *sua sponte* in favor of the defendants upon a substantive review of the record, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on March 4, 2016.

*[signature: Erin Wilder-Doomes]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**